## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JOVONNE GORE,             )
                             )
     Plaintiff,         )
                             )
v.                        )     CIVIL ACTION FILE NO.
                             )     _____
SOFI LENDING CORP.,    )
                             )     **JURY TRIAL DEMANDED**
     Defendant.    )

## COMPLAINT

Plaintiff, Jovonne Gore, by counsel, hereby files his Complaint against SoFi Lending Corp. ("Defendant" or "SoFi") as follows:

## INTRODUCTION

1.     This is an action for actual, statutory, and punitive damages, attorney's fees and costs, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

2.     Plaintiff is an individual, a resident of the State of Georgia, and a "consumer" under 15 U.S.C. § 1681a(c).

3.     Plaintiff is the victim of identity theft. Upon information and belief, in June 2021, an unknown fraudster(s) opened an account in his name with SoFi bearing an account number ending in 5312 (the "Account") and for $15,000.00. The

fraudster used a street address that did not belong to Plaintiff when opening the Account.

4.      Defendant later sold the Account to LVNV Funding ("LVNV"), a debt buyer.

5.      Defendant is a foreign for-profit corporation.  Defendant is authorized to transact business in the State of Georgia, is subject to the jurisdiction of this Court, and may be served with process by serving its registered agent:  Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA  30092.

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically the FCRA, 15 U.S.C. § 1681, et seq.

7.      Venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1B(1) and (3).

## FACTUAL ALLEGATIONS

8.      Plaintiff lives and works in Atlanta, Georgia.

9.      Plaintiff did not apply for and/or open the Account.  The Account was the result of fraud and is inaccurate.

10.     Plaintiff did not authorize any other person(s) to open the Account in his name.

11.     Plaintiff has not benefited from the Account.

12.     Within the two years preceding the filing of this Complaint, Defendant reported the inaccurate Account to one or more of the national credit bureaus, Equifax, TransUnion LLC ("TransUnion"), and Experian (collectively "CRAs"), to be included in Plaintiff's credit files maintained by the CRAs.

13.     With respect to TransUnion, Defendant reported to TransUnion in June 2021 that the Account belonged to Plaintiff.  It did not.

14.     In July 2021, upon information and belief, Defendant asked TransUnion to remove the Account from Plaintiff's TransUnion credit file.

15.     In October 2021, upon information and belief, Defendant reversed itself and asked TransUnion to place the Account back onto Plaintiff's credit file.

16.     Plaintiff subsequently sent TransUnion a dispute letter dated October 1, 2021 ("October 1 Dispute") wherein he disputed the Account as fraud and enclosed his SSN card and driver's license.

17.     Upon information and belief, TransUnion sent the October 1 Dispute, with Plaintiff's SSN card and driver's license, to Defendant.

18.     Defendant did not ask TransUnion to delete the Account from Plaintiff's credit file in response to its receipt of the October 1 Dispute.

19.     To the contrary, Defendant advised TransUnion that the disputed Account information was accurate.  This was incorrect.  The Account was not accurate.

20.     Defendant's investigation of the October 1 Dispute was not reasonable.

21.     Defendant did not contact Plaintiff in response to the October 1 Dispute.

22.     By November 2021, the Account was being reported to TransUnion by Defendant with a late payment history showing that Plaintiff owed $15,000 and was past due on $1,466.  This was not accurate.  Plaintiff did not owe Defendant these amounts.

23.     Plaintiff again disputed the Account with TransUnion ("November Dispute").

24.     Upon information and belief, TransUnion sent Plaintiff's November Dispute to Defendant.

25.     Defendant did not ask TransUnion to delete the Account from Plaintiff's credit file in response to its receipt of the November Dispute.

26.     Defendant's investigation of the November Dispute was not reasonable.

27.     Defendant again advised TransUnion that the Account was accurate in response to the November Dispute.  It was not accurate.

28.     By December 2021, Defendant was reporting to TransUnion that Plaintiff owed $15,128 on the Account and was past due in the amount of $1,957. This was inaccurate.  Plaintiff did not owe these amounts.

29.     Plaintiff made another dispute ("December Dispute") with TransUnion.

30.     TransUnion forwarded the December Dispute to Defendant.

31.     Defendant did not ask TransUnion to delete the Account in response to its receipt of the December Dispute.

32.     Defendant did not conduct a reasonable investigation of the December Dispute.

33.     Instead, Defendant advised TransUnion (again) that the Account was accurate.  It was not accurate.  By this time, Defendant was reporting to TransUnion that the Account had been charged off.

34.     Upon information and belief, Defendant sold the Account to LVNV on or before January 13, 2022.

35.     After it sold the Account to LVNV, Defendant no longer owned the Account.

36.     After it sold the Account to LVNV, Defendant no longer had any relationship with Plaintiff arising from the Account.

37.     Plaintiff subsequently disputed the Account with TransUnion again ("February Dispute").

38.     TransUnion forwarded the February Dispute to Defendant.

39.     Defendant did ask TransUnion to delete the Account as a result of its receipt of the February Dispute.

40.     To the contrary, Defendant advised TransUnion (again) that the disputed Account was accurate.  This was incorrect.  The Account was not accurate.

41.     On February 26, 2022, Plaintiff obtained a police report ("Police Report") from the East Point Police Department wherein he advised Officer M. Jester that the Account was not his and the result of fraud.

42.     Plaintiff subsequently sent TransUnion another dispute letter dated March 25, 2022 ("March Dispute") wherein he enclosed the Police Report, his SSN card, and his driver's license.

43.     Upon information and belief, TransUnion sent the March Dispute to Defendant, with the Police Report.

44.     Defendant did not ask TransUnion to delete the Account from Plaintiff's credit file in response to its receipt of the March Dispute.

45.     Defendant did not ask TransUnion to delete the Account from Plaintiff's credit file in response to its receipt of the Police Report.

46.     Defendant did not attempt to repurchase the Account from LVNV.

47.     To the contrary, Defendant (again) advised TransUnion that the Account was accurate in response to the March Dispute.  It was not accurate.

48.     Upon information and belief, Defendant did not contact the East Point Police Department in response to the March Dispute.

49.     Defendant did not have any reason to believe the Police Report was not an authentic police report.

50.     Defendant did not contact Officer Jester in response to the March Dispute.

51.     Plaintiff made another dispute of the Account with TransUnion in May 2022 ("May Dispute").   This time he included an Identity Theft Affidavit ("Affidavit") that listed the Account.   He signed the Affidavit before a notary and under penalty of perjury and attested that the Account was not his.

52.     Upon information and belief, TransUnion forwarded the May Dispute, including the Affidavit, to Defendant.

53.     Defendant did not ask TransUnion to delete the Account from Plaintiff's credit file as a result of the May Dispute and/or the Affidavit.

54.     Defendant's investigation of the May Dispute was not reasonable.

55.     Defendant again, even after receipt of the Affidavit, continued to falsely advise TransUnion that the Account belonged to Plaintiff.

56.     Plaintiff then had a law firm send certified letters ("Attorney Letters") to all the CRAs dated June 13, 2022 and Defendant disputing the Account as inaccurate and the result of fraud.

57.     Defendant received the Attorney Letter addressed to it.

58.     Defendant did not ask TransUnion to delete the Account in response to its receipt of the Attorney Letter.

59.     Defendant did not contact the attorney that signed the Attorney Letter as part of its investigation into the accuracy of the Account.

60.     Defendant also received from TransUnion the Attorney Letter that was separately addressed to TransUnion.

61.     Defendant did not ask TransUnion to delete the Account in response to the Attorney Letter it received from TransUnion.

62.     Defendant's investigation of the Attorney Letters (received directly and/or from TransUnion) was not reasonable.

63.     Defendant again advised TransUnion that the Account was accurate when, by this time, it had received the numerous disputes described above, the Police Report, the Affidavit, and the Attorney Letter.

64.     Upon information and belief, Defendant received similar disputes from Experian and Equifax and did not request that those CRAs delete the Account from Plaintiff's Experian and/or Equifax credit files in response.

65.     Defendant's investigations of the disputes it received about the Account from Experian and Equifax were not reasonable.

66.     As a proximate result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages, including but not limited to: (i) credit denials; (ii)

embarrassment when Defendant told the CRAs and LVNV that he owed the debt when he did not; (iii) harm to his credit reputation, credit score, and credit history when Defendant told the CRAs that he owed the debt when he did not; (iv) emotional distress from feeling that Defendant would never remove the inaccurate Account from his credit files; (v) stress and anxiety when Defendant sold the Account to a debt buyer; (vi) emotional distress from having to worry about what else he could do to persuade Defendant to ask the Cas to remove the inaccurate Account from his credit files even after he had provided the Police Report and Fraud Affidavit; (vii) emotional distress from being denied credit and having existing credit reduced; (viii) emotional distress from having inaccurate credit reports; (ix) emotional distress from reading the letters from the CRAs wherein the CRAs advised him of Defendant's false verification of the Account; (x) his time and the postage expense of drafting and sending credit disputes to the CRAs about the Account; (xi) his time to travel to the East Point Police Department to file a police report; (xii) stomach pain and discomfort; and (xiii) other damages to be proven at trial.

## Count 1 – Violation of 15 U.S.C. § 1681s-2(b) of the FCRA

67.    At all times relevant hereto, Defendant was a "person" as that term is defined by 15 U.S.C. 1681a(b).

68.    At all times relevant hereto, Defendant was a "furnisher" as that term is used in 15 U.S.C. 1681s-2(b).

69.     Defendant violated Sections 1681n and 1681o of the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b) as set forth above.

70.     Defendant's conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious damages and harm to Plaintiff described in Paragraph 66 above, and as a result Defendant is liable to compensate Plaintiff for the full amount of statutory, actual, and punitive damages, along with attorney's fees and costs, as well as such other relief, as permitted by law.

WHEREFORE, Plaintiff respectfully prays that the Court:

1.     Issue process to Defendant;

2.     Conduct a trial by jury of all claims asserted herein;

3.     Enter judgment in favor of Plaintiff as consistent with the jury's verdict; and,

4.     Grant Plaintiff such other and further relief as it deems just and necessary.

This 1st day of December, 2022.

/s/ John A. Love
John A. Love
Ga. Bar No. 459155

**Love Consumer Law**
2500 Northwinds Parkway, Suite 330
Alpharetta, GA 30009
Tel: 404.855.3600

Fax: 404.301.2300
tlove@loveconsumerlaw.com

Counsel for Plaintiff